IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE BASE HOLDINGS, LLC, § | |
| § | |
| Debtor. § | Civil Action No. 3:11-CV-3531-D |
| § | (Bank. Ct. No. 09-34269-SGJ) |
| § | (Adv. No. 09-03256) |
| CENTER OPERATING COMPANY, § | |
| L.P., § | |
| § | |
| Plaintiff-counterdefendant, § | |
| § | |
| VS. § | |
| § | |
| BASE HOLDINGS, LLC, § | |
| § | |
| Defendant-counterplaintiff. § | |

MEMORANDUM OPINION
AND ORDER

Robert Yaquinto, Jr. ("Trustee"), the trustee for chapter 7 debtor Base Holdings, LLC ("Base"), who is the defendant-counterplaintiff in the adversary proceeding at issue, moves to withdraw the reference, contending that the bankruptcy court lacks Article III power to adjudicate Base's state-law counterclaims. The bankruptcy judge recommends that the court deny the motion on the grounds that Base's counterclaims will necessarily be resolved in allowing or disallowing the proof of claim of Center Operating Company, L.P. ("Center"), the plaintiff-counterdefendant in the adversary proceeding, and that Base consented to final adjudication of the adversary proceeding by the bankruptcy court.[1]  The Trustee objects to

---

[1] Alternatively, the bankruptcy judge recommends that the court consider her memorandum opinion and order on the parties' cross-motions for summary judgment as a proposed ruling, adopt the memorandum opinion and order and enter it as the decision of the

the bankruptcy judge's report and recommendation. The court adopts the report and recommendation for the reasons that follow, and it denies the motion to withdraw the reference.

I

Because the parties are familiar with the background facts and procedural history and this is an unpublished opinion,[2] the court will focus on the facts that directly bear on the court's decision. After Base filed for chapter 11 protection, Center initiated the instant adversary proceeding seeking a declaratory judgment pertinent to the calculation of rent and to the parties' rights, status, and legal relations under a lease for premises on which Base had operated a restaurant. Center also filed a proof of claim seeking nearly $1.6 million for amounts allegedly due under the lease. Base answered and counterclaimed, asserting state-law claims for fraud,[3] negligent misrepresentation, and breach of the lease.[4] It sought $2.8

---

district court, and refer all remaining matters in the adversary proceeding to the bankruptcy judge to conduct them, with the proviso that the bankruptcy judge make only proposed findings of fact and conclusions of law for *de novo* consideration.

[2]Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[3]Base asserted counterclaims for statutory real estate fraud, under Tex. Bus. & Com. Code Ann. § 27.01(a)(1) and (2) (West 2009), common law fraud in the inducement by affirmative representation, common law fraud in the inducement by nondisclosure, common law fraud, and string-along fraud.

[4]Base also asserted counterclaims for breach of warranty and unjust enrichment, but the bankruptcy judge granted Center's motion to dismiss these claims.

million in actual damages. Base's bankruptcy was soon converted to a chapter 7 case, the Trustee was appointed, and the Trustee became the defendant-counterplaintiff in the adversary proceeding.

Various proceedings occurred in the adversary proceeding and in related state-court litigation. On June 23, 2011 the Supreme Court decided *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594 (2011). In July 2011 the parties filed cross-motions for summary judgment. Center sought summary judgment on all of Base's counterclaims, and Base sought partial summary judgment on two of its counterclaims. The bankruptcy judge heard oral argument on the parties' cross-motions on August 29, 2011. Before the bankruptcy judge issued her decision on the motions, however, the Trustee filed on December 21, 2011 the instant motion to withdraw the reference.[5] The Trustee maintains that, under *Stern*, the bankruptcy judge lacks constitutional authority to render a final judgment on Base's counterclaims.

II

Under *Stern* "[t]he Bankruptcy Court . . . lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2620. If follows, however, that "a bankruptcy court *would* have jurisdiction to enter final judgment on state law counterclaims that are necessarily resolved in the process of ruling on a creditor's proof of claim." *In re Sundale, Ltd.*, 2012 WL 5974125, at *4 (11th Cir. Nov. 29, 2012) (emphasis added)

---

[5]The Trustee also filed a motion for remand, but the motion was later withdrawn.

(unpublished opinion).

The bankruptcy judge concludes in her report and recommendation that "it seems *necessary* to resolve the counterclaims as part of the proof of claim allowance or disallowance process (*i.e.*, here, unlike in *Stern v. Marshall*, the plaintiff against whom the counterclaims are asserted still has a live, unresolved proof of claim that will not survive if the counterclaims are sustained)." Bankr. Ct. Report & Rec. 8 (emphasis in original; bold font omitted). The Trustee's sole basis for arguing that his tort counterclaims for damages will not necessarily be resolved in the process of ruling on Center's proof of claim is that he seeks damages in excess of the amount of the proof of claim. He argues simply that

> [t]he Trustee's counterclaims are independent of [Center's] claims because the Trustee seeks damages from [Center] that would exceed the amount of [Center's] claim. The Trustee seeks damages in excess of $2 million for construction improvements that Base incurred as a direct result of [Center's] fraudulent inducement. [Center] seeks $1.5 million for rent under the Lease.

Trustee Am. Obj. 6.

The court disagrees with this reasoning. The question under *Stern* is whether the state law counterclaims will be resolved in the process of ruling on Center's proof of claim, not whether the amount of the counterclaim exceeds the amount of the proof of claim. Although the fact that the amount of a counterclaim exceeds the amount of a proof of claim may, in tandem with other factors, support the conclusion that the state law counterclaim will not be resolved in the process of ruling on a creditor's proof of claim, the difference in amounts is not alone determinative. For example, in *In re Global Technovations, Inc.*, 694 F.3d 705,

709 (6th Cir. 2012), the creditor's proof of claim was in the amount of $12 million, and the debtor's counterclaim exceeded that sum. *Id.* at 709, 711-12. Yet this fact alone did not preclude the Sixth Circuit from concluding that the bankruptcy court had constitutional jurisdiction under *Stern* to adjudicate the debtor's fraudulent transfer claim because "'it was not possible . . . to rule on [the creditor's] proof of claim without first resolving' the fraudulent-transfer issue." *Id.* at 722 (quoting *Stern*, 131 S.Ct. at 2616).

Accordingly, where, as here, there is no *Stern* impediment, the court declines to withdraw the reference.

### III

Even if the court is incorrect in concluding that all of Base's counterclaims will be resolved in the process of ruling on Center's proof of claim, the court holds that the Trustee waived Base's right to an Article III tribunal's presiding over the adversary proceeding.[6]

"The waivable nature of the allocation of adjudicative authority between bankruptcy courts and Article III courts is well established." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 566 (9th Cir. 2012). "[A] bankruptcy litigant impliedly consents to the bankruptcy court's jurisdiction when he fails to timely object." *Id.* at 567.

The Supreme Court decided *Stern* on June 23, 2011. The parties filed their cross-motions for summary judgment on July 27, 2011 (Center) and July 28, 2011 (Base). The bankruptcy judge heard oral argument on August 29, 2011 and took the motions under

---

[6]The bankruptcy judge discussed this in terms of "consent." The court will address it as a matter of "waiver," although the difference in terminology may be immaterial.

advisement. Almost six months after *Stern* was decided, and after continuing to litigate the adversary proceeding, filing a motion for partial summary judgment, and participating in oral argument *without* challenging the bankruptcy court's constitutional authority under *Stern*, the Trustee on December 21, 2011 filed the instant motion to withdraw the reference. The court holds that the Trustee waived his *Stern* challenge by impliedly consenting to the bankruptcy court's authority to enter a final judgment on the counterclaims. Had it been the Trustee's intent to raise a challenge under *Stern*, it was certainly reasonable to expect that he do so *before* he filed his own summary judgment motion and participated in oral argument before the bankruptcy court. His undertaking these post-*Stern* actions without objection evinces implied consent and therefore waiver of a final judgment by an Article III judge.

\* \* \*

The court adopts the report and recommendation of the bankruptcy judge, albeit on the somewhat different reasoning set forth in this memorandum opinion and order. The Trustee's motion to withdraw the reference is denied.

**SO ORDERED**.

January 30, 2013.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　SIDNEY A. FITZWATER
　　　　　　　　　　　　　　　　　CHIEF JUDGE