IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE BASE HOLDINGS, LLC, | § | |
| | § | |
| Debtor. | § | Civil Action No. 3:11-CV-3531-D |
| | § | (Bank. Ct. No. 09-34269-SGJ) |
| | § | (Adv. No. 09-03256) |
| CENTER OPERATING COMPANY, | § | |
| L.P., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| BASE HOLDINGS, LLC, | § | |
| | § | |
| Defendant-Counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

The court has withdrawn the reference in this adversary proceeding and now considers the bankruptcy court's proposed disposition of plaintiff-counterdefendant's motion to dismiss second amended counterclaim and the parties' cross-motions for summary judgment, which are addressed to defendant-counterplaintiff's counterclaims. Having conducted *de novo* review of the bankruptcy court's December 5, 2014 second report and recommendation, including its proposed memorandum opinion and order addressing cross-motions for summary judgment on defendant's counterclaims ("Bankruptcy Court Proposed Opinion"), the court grants in part and denies in part plaintiff-counterdefendant's motion to dismiss, denies defendant-counterplaintiff's motion for partial summary judgment, and grants in part and denies in part plaintiff-counterdefendant's motion for summary judgment. The

court directs the clerk of court to reopen this case statistically.  The court will address the

need for any additional pretrial scheduling, and will set the remainder of the case for trial,

by separate orders.

I

The court will defer its discussion of the background facts until they are pertinent to

its decision on the merits.  The following procedural history will assist in understanding

today's decision.

Despite somewhat extensive litigation of this adversary proceeding in the bankruptcy

court, and additional proceedings in this court on a previous motion to withdraw the

reference and a direct appeal, because of developments in the law following the Supreme

Court's decision in *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594 (2011), this court, on the

bankruptcy court's recommendation, has withdrawn the reference.[1]  As part of the

bankruptcy court's second report and recommendation, it recommends that this court

consider six proposals *de novo* under 28 U.S.C. § 157(c)(1): (1) the bankruptcy court's July

19, 2010 order granting in part and denying in part plaintiff-counterdefendant Center

Operating Company, L.P.'s ("Center's") motion to dismiss defendant-counterplaintiff Base

---

[1]Because the court has withdrawn the reference, the *Stern*-related issues addressed in
*In re Base Holdings, LLC*, 2014 WL 895403, at *2-4 (N.D. Tex. Mar. 5, 2014) (Fitzwater,
C.J.) (on appeal from the bankruptcy court), and *In re Base Holdings, LLC*, 2013 WL
357607, at *1-3 (N.D. Tex. Jan. 30, 2013) (Fitzwater, C.J.) (on motion to withdraw the
reference), no longer remain.

Holdings, LLC's ("Base's")[2] second amended counterclaim; (2) the June 28, 2010 transcript memorializing the bankruptcy court's bench ruling that undergirds the partial dismissal order; (3) the July 3, 2012 summary judgment memorandum opinion and order granting summary judgment on all remaining counterclaims of Base except for declaratory judgment on what "Chili's Opening Date" means and therefore when Center's rent claims began to accrue; (4) the February 19, 2013 "Recital and Stipulation," in which the parties agreed that the phrase "Chili's Opening Date" means December 8, 2008; (5) the February 19, 2013 final judgment of the bankruptcy court entered pursuant to the bankruptcy court summary judgment ruling and the "Recital and Stipulation"; and (6) the Bankruptcy Court Proposed Opinion.  Base objects in part to the bankruptcy court's second report and recommendation, including to the Bankruptcy Court Proposed Opinion.[3]

---

[2]Robert Yaquinto, Jr., Base's chapter 7 trustee, is the defendant-counterplaintiff.  For clarity, the court will refer to Base as the defendant-counterplaintiff.

[3]In the court's October 20, 2014 order of reference, it ordered that any objections to the bankruptcy court's recommendation be filed within 14 days of the date the recommendation was docketed in this court.  The bankruptcy court's second report and recommendation was docketed on December 5, 2014.  Base did not file its objections until December 29, 2014, and Center objects on the ground that they are untimely.  Although Base's objections are untimely, because they merely incorporate objections that Base has previously filed, the court will consider them.

II

28 U.S.C. § 157(c)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Even where the proceeding is core, if *Stern* confines the bankruptcy court to submitting proposed findings of fact and conclusions of law to the district court, the court will follow the objection procedure found in § 157(c)(1).

Base does not object to the court's (1) adopting the bankruptcy court's July 19, 2010 order granting in part and denying in part Center's motion to dismiss Base's second amended counterclaim; (2) granting Center's motion for summary judgment on Base's breach of contract counterclaim to the extent it is based on Center's closing the south entrance of the American Airlines Center ("AAC") and preventing the disbursement of marketing materials;[4] (3) adopting the bankruptcy court's recommendation, based on the parties' "Recital and Stipulation," that the phrase "Chili's Opening Date" in the June 2, 2008 Lease

---

[4]Base alleges that when the circus came to the AAC in late July 2009, Center barricaded the main entrance adjacent to the Chili's Bar & Grill restaurant ("Chili's") that provides interior access to the restaurant, and did not allow Base to advertise by handing out handbills and coupons inside the AAC.  During an event in August 2009, Center again barricaded the main entrance to the AAC, preventing customers and potential customers from using the Chili's.

Agreement ("Lease") between Center and Base is December 8, 2008 ;[5] (4) granting Center's motion for summary judgment on Base's breach of contract counterclaim to the extent it is based on Center's decision to charge rent before the Chili's Bar & Grill restaurant ("Chili's") actually opened; and (5) adopting the bankruptcy court's recommendation that the court dismiss, as moot, Base's counterclaim for attorney's fees.  Accordingly, because Base has not objected, the court adopts these bankruptcy court rulings.[6]

III

The court now turns to the grounds of the parties' summary judgment motions to which objections have been made and that are therefore subject to *de novo* review.

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial.  When Center or Base

---

[5]Although Base does not object in this respect, the court notes that, in their "Recital and Stipulation," the parties expressly provide that, if the bankruptcy court's summary judgment ruling (meanings its July 3, 2012 summary judgment memorandum opinion and order granting summary judgment on all remaining counterclaims except one breach of contract claim) "is overturned on appeal," the following stipulations "are null and void": that the "Chili's Opening Date" under the Lease is December 8, 2008, and that the Trustee (i.e., Base) "has no damages arising from any alleged breach of the [Lease] on account of any efforts of Center to assert Chili's Opening Date earlier than December 8, 2008, because Base never paid rent under the [Lease.]"  Feb. 19, 2013 Recital and Stipulation at 2.  The court's decision today does not overturn the bankruptcy court's summary judgment ruling "on appeal," but it does overturn the granting of summary judgment in part.  If as a result of this decision a party has a basis to seek relief from the "Recital and Stipulation," it must promptly seek such relief.

[6]No objections have been filed to the court's consideration of other documents among the six identified by the bankruptcy court.  To the extent that the court has not explicitly adopted or declined to adopt a proposal of the bankruptcy court, it has found it unnecessary to do so in order to decide the motions to dismiss and for summary judgment.

moves for summary judgment on a claim or defense as to which it will not have the burden of proof at trial, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claim or defense in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the opposing party must go beyond its pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The failure of the party with the burden of proof to produce evidence as to any essential element of a claim or defense renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory as to the claim or defense in question if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When a party moves for summary judgment on a claim or defense on which it will have the burden of proof at trial, however, it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "Th[is] court has noted that the 'beyond peradventure' standard is

'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

IV

Following *de novo* review, the court adopts the Bankruptcy Court Proposed Opinion concerning Center's motion for summary judgment on Base's negligent misrepresentation counterclaim. Although the court would not necessarily express its reasoning and analysis in the same manner as has the bankruptcy court, the court neither disagrees in any material respect with this part of the Bankruptcy Court Proposed Opinion nor concludes that any additional explanation of the ruling is necessary. Base's counterclaim for negligent misrepresentation is dismissed.

V

The court now considers Center's summary judgment motion to the extent addressed to Base's fraudulent inducement counterclaims.

A

During the spring of 2007, Base began negotiating with Center to open a Chili's at the AAC,[7] which Center operated. The parties executed a March 2, 2007 letter agreement

---

[7]Because both parties move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

that outlined the basic terms of a lease agreement and provided, *inter alia*, that "[t]he parties

acknowledge that adequate parking spaces are necessary for the Chili's to be successful."

Base 8/19/11 App. 71.  Although Center had access to certain garage parking at the AAC,

it did not own any of the surrounding surface parking lots.  These lots were owned and

controlled by Hillwood Development Partners and its affiliated entities (collectively,

"Hillwood").  During the initial lease negotiations, Center's Vice President of Business

Development, Joe Skenderian ("Skenderian"), indicated to Base that Center would need to

obtain a parking agreement with Hillwood before Center could assure Base that it had the

parking it needed.  Base maintains this was to be a 20-year parking agreement.

On June 2, 2008 Center requested that Base execute the Lease.  Section 20.1 of the

Lease provided that, "[p]ursuant to the terms and conditions set forth in the Parking

Appendix set forth on Exhibit 'C' attached hereto and made part hereof for all purposes,

[Center] hereby leases certain parking spaces to [Base]."  *Id.* at 41 (underlining omitted).

The Parking Appendix, attached as Exhibit C, provided that "[d]uring Non-Event Dates,

[Center] shall provide parking for [Base's] Customers in Parking Lot E near the Premises,

pursuant to the Proposal Regarding COC Retail Parking Easement Between [Hillwood] and

[Center] [('Hillwood Parking Agreement')] attached hereto as Appendix '1.'"  *Id.* at 50

(underlining omitted).  Appendix "1" stated, "Attach Hillwood [Parking] Agreement."  *Id.*

at 51.

That same day, in response to Center's request that Base execute the Lease, Base

informed Center that it had signed a copy of the Lease, but "[w]e do need the various exhibits and attachments." *Id.* at 62.  Skenderian responded, "[o]nce I receive the signed lease, I will obtain the signatures on the various attachments, compile the exhibits and send out a complete lease package." *Id.*  Later that day, Base provided Center a signed copy of the Lease.

Between November 2007 and June 2008, Center made "many" attempts to get the Hillwood Parking Agreement signed, *id.* at 125, but its efforts were unsuccessful.  Allegedly unbeknownst to Base, execution of the Hillwood Parking Agreement was conditioned upon Hillwood and Center's entering into a more comprehensive agreement that addressed parking around the AAC.  According to Hillwood, although not directly communicated to Center, it was apparent from the letter of intent between Hillwood and Center that the Hillwood Parking Agreement for parking in Lot E would not be signed until a more comprehensive parking agreement was signed that addressed parking around the AAC.  In addition, on June 11, 2008 Hillwood confirmed with Center that Center and Hillwood needed to finalize the Sixth Amended Parking Agreement before Hillwood would execute the Hillwood Parking Agreement for the Chili's.  Center never disclosed to Base that obtaining the Hillwood Parking Agreement was conditioned on entering into a comprehensive parking agreement or that Center and Hillwood were having difficulty reaching such an agreement.  As of November 12, 2008, the Hillwood Parking Agreement still had not been finalized.  In fact, the Hillwood Parking Agreement was not executed until

September 2009, and the version that was signed had a term of nine months, ending June 30,

2010, not 20 years, as Base had expected.

B

Base alleges counterclaims against Center under the Texas Business and Commerce

Code, which provides, in relevant part, that a person is liable for actual damages caused by

fraud in a transaction involving real estate.  Section 27.01(a) defines fraud as follows:

> (1) [a] false representation of a past or existing material fact,
> when the false representation is
>> (A) made to a person for the purpose of inducing
>> that person to enter into a contract; and
>> (B) relied on by that person in entering into that
>> contract; or
>
> (2) [a] false promise to do an act, when the false promise is
>> (A) material;
>> (B) made with the intention of not fulfilling it;
>> (C) made to a person for the purpose of inducing that
>> person to enter into a contract; and
>> (D) relied on by that person in entering into that
>> contract.

Tex. Bus. & Com. Code Ann. § 27.01 (West 2015).  Base also asserts counterclaims under

Texas common law for fraud in the inducement by affirmative representation and fraud in

the inducement by nondisclosure.

Under Texas law, fraudulent inducement is a particular species of fraud that arises

only in the context of a contract and requires the existence of a contract as part of its proof.

*Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).  Thus with a fraudulent inducement

claim, the elements of fraud must be established as they relate to an agreement between the

parties. *Id.* at 798-99.  The elements of fraud are: (1) that the speaker made a material misrepresentation (2) that he knew was false when he made it or that he made recklessly without any knowledge of its truth and as a positive assertion (3) with the intent that the other party act upon it and (4) that the other party acted in reliance on the misrepresentation and (5) suffered injury thereby. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).  A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Id.* (citation omitted). Fraud may also occur when (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001).  When the alleged fraud involves a promise to do an act in the future, the plaintiff must prove that, at the time the defendant made the promise, it had no intention of performing the act. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

C

Center maintains that there is no genuine issue of material fact as to whether, at the time the parties entered into the Lease, Center did so with the intention, design, and purpose of deceiving Base and with no intention of performing the Lease.  Center points to evidence that its representative made multiple efforts to obtain Hillwood's signature on the Hillwood Parking Agreement, both before and after the parties signed the Lease.  Center also cites evidence that it ultimately obtained a signed parking agreement for Lot E, just before Base closed the Chili's.

In response, Base does not produce evidence that would enable a reasonable trier of fact to find that, at the time the parties entered into the Lease, Center had no intention of obtaining the Hillwood Parking Agreement.  Instead, Base focuses on alleged misrepresentations and failures to disclose information that it maintains induced it to sign the Lease.  Base posits that Center materially misrepresented that, if Base signed the Lease, Center would provide Base the Hillwood Parking Agreement.  Base introduces evidence that Center represented that "[o]nce [Center] receive[s] the signed lease, [it] will obtain the signatures on the various attachments, compile the exhibits and send out a complete lease package."  Base 8/19/11 App. 62.  Base has also introduced evidence that, at the time Center made this representation, Center did not have an agreement with Hillwood that would allow Base to use parking spaces at the AAC, and that Center had attempted unsuccessfully on several occasions to obtain such an agreement before the Lease was signed.  Further, Base has presented evidence that, before the Lease was signed, it was apparent from the letter of

intent between Hillwood and Center that the Hillwood Parking Agreement for parking in Lot E would not be signed until the more comprehensive parking agreement was executed.  Base also relies on evidence that Center failed to disclose that it did not have a parking agreement with Hillwood; that the Hillwood Parking Agreement was conditioned upon other agreements that Center and Hillwood were negotiating; or that, despite several attempts, Hillwood had refused to sign the Hillwood Parking Agreement.  Base maintains that "Center's failure to disclose the whole truth concerning the Hillwood Parking Agreement conveyed a false impression that Center had or would immediately have an executed parking agreement with Hillwood."  Base 8/19/11 Br. 24.

### D

The court holds that Base has failed to produce evidence that would enable a reasonable trier of fact to find that Center is liable under Tex. Bus. & Com. Code Ann. § 27.01(a)(2)—that is, to find that, at the time the parties entered into the Lease, Center had no intention of securing the Hillwood Parking Agreement.  In fact, Base's evidence would only enable a reasonable trier of fact to find the opposite—that Center *did* intend to secure the Hillwood Parking Agreement, because it tried to obtain signatures on that agreement "many" times both before and after the Lease was executed.  Base 8/19/11 App. 125. Accordingly, Center is entitled to summary judgment dismissing Base's counterclaim under Tex. Bus. & Com. Code Ann. § 27.01(a)(2) to the extent it is based on the premise that Center had no intention of securing the Hillwood Parking Agreement.  A necessary element of a § 27.01(a)(2) claim is that there was a false promise to do an act "made with the

- 13 -

intention of not fulfilling it." *Id.* Base's failure to present evidence that would enable a reasonable trier of fact to find that, when Center promised Base that it would obtain the Hillwood Parking Agreement, it intended not to fulfill the promise, is fatal to this counterclaim.

To the extent, however, that Base relies on evidence in support of its other fraudulent inducement claims, including its claim brought under Tex. Bus. & Com. Code Ann. § 27.01(a)(1),[8] that Center made an affirmative misrepresentation, or failed to disclose a material fact within Center's knowledge, Base is not required to prove that Center had no intention of securing the Hillwood Parking Agreement. Base is only required to do so to the extent the fraud counterclaims are based on a "promise to do an act in the future." *Spoljaric*, 708 S.W.2d at 434. Base is not relying on a promise of future performance to prove that Center engaged in fraud when, according to Base, Center falsely implied that obtaining the executed Hillwood Parking Agreement was merely a matter of obtaining signatures. Nor is Base relying on a promise of future performance to prove that Center engaged in fraud when it failed to disclose that it did not have a parking agreement with Hillwood, that the Hillwood Parking Agreement was conditioned upon other agreements then under negotiation, or that

---

[8]Unlike Tex. Bus. & Com. Code Ann. § 27.01(a)(2), which applies to a false promise "made with the intention of not fulfilling it," a claim under § 27.01(a)(1) requires only that a misrepresentation be made for the purpose of inducing a person to enter into a contract, and that the person rely on that misrepresentation in entering into the contract. Accordingly, the result reached in § V(D) (which grants summary judgment on a § 27.01(a)(2)-based claim) and § V(E)(3) (which denies summary judgment on a § 27.01(a)(1)-based claim) are not inconsistent.

Center had previously attempted unsuccessfully to obtain signatures on the Hillwood Parking Agreement. Accordingly, Base's failure to produce evidence that Center had no intention of securing the Hillwood Parking Agreement is not of itself sufficient to entitle Center to summary judgment dismissing the remainder of Base's fraudulent inducement counterclaims.[9]

E

In a footnote in its summary judgment brief, Center appears to move for summary judgment on various other elements of Base's fraudulent inducement counterclaims. The court will now address each one.

1

Concerning Base's counterclaim for common law fraud in the inducement by affirmative representation, Center appears to move for summary judgment on "the elements that when Center made the representation, Center either (i) knew the representation was false, or (ii) made the representation recklessly, as a positive assertion, and without knowledge of its truth."  Center 7/27/11 Br. 29 n.6.

Base alleges that Center affirmatively misrepresented that, if Base executed the Lease,

---

[9]To the extent Center seeks summary judgment on Base's fraudulent inducement counterclaims based on Base's failure to come forward with evidence that Center entered into the Lease with the intention, design, and purpose of deceiving Base, a fraudulent inducement claim does not require evidence of an intention, design, or purpose of deceit.  Rather, the "intent" element of a fraudulent inducement claim only requires an intent that the party act as a result of the misrepresentation or nondisclosure; "intent to deceive" is not a required element. *See Italian Cowboy*, 341 S.W.3d at 337; *Bradford*, 48 S.W.3d at 754-55.

- 15 -

Center would provide Base with the Hillwood Parking Agreement.  Base has produced evidence that Center represented to Base that, "[o]nce [Center] receive[s] the signed lease, [it] will obtain the signatures on the various attachments, compile the exhibits and send out a complete lease package." Base 8/19/11 App. 62.  Base argues this representation was false because, at the time the Lease was executed, not only did Center not have an agreement with Hillwood that would allow Base to use parking spaces at the AAC, Center knew or should have known that it would be unable to obtain a signed Hillwood Parking Agreement until the parties agreed to and executed a more comprehensive parking agreement for the AAC.

A reasonable trier of fact could find that Center falsely implied to Base that obtaining the executed Hillwood Parking Agreement was merely a matter of obtaining signatures when, in fact, much more was required in negotiating a more comprehensive parking agreement before Hillwood would sign an agreement.  Additionally, Base has introduced evidence that, at the time Center made these representations, it knew or should have known that it would be unable to obtain a signed Hillwood Parking Agreement until the parties agreed to and executed a more comprehensive parking agreement.  Base has presented evidence that would enable a reasonable trier of fact to find that, before the Lease was executed, it was apparent from the letter of intent between Hillwood and Center that the Hillwood Parking Agreement for parking in Lot E would not be signed until a more comprehensive parking agreement was executed.  And Base has adduced evidence that Center had requested that Hillwood execute the Hillwood Parking Agreement "many" times

before the Lease was signed, without success.  Based on this evidence, a reasonable trier of fact could find that Center either knew that its representation that it would obtain a signed Hillwood Parking Agreement was false, or Center made this representation recklessly, as a positive assertion, without knowledge of its truth.  Accordingly, to the extent Center moves for summary judgment as to Base's counterclaim for common law fraud in the inducement by affirmative representation, the motion is in this respect denied.

2

Regarding Base's counterclaim for common law fraud in the inducement by nondisclosure, Center appears to move for summary judgment on the basis that Base cannot show that Center was deliberately silent when it had a duty to speak.

Generally, the failure to disclose information—which is alleged here—does not constitute fraud unless there is a duty to disclose the information.  *See Bradford*, 48 S.W.3d at 755.

> Absent a formal or informal fiduciary or confidential relationship . . . a duty to speak may arise in the following situations: (1) one who voluntarily discloses information has a duty to disclose the whole truth; (2) one who makes a representation has a duty to disclose new information when he is aware that the new information makes the earlier representation misleading or untrue; and (3) one who makes a partial disclosure and conveys a false impression has a duty to correct it.

*JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 409 (Tex. App. 2011, pet. denied).

"[A] general duty to disclose information may arise in an arm's-length business transaction

when a party makes a partial disclosure that, although true, conveys a false impression." *Bradford*, 48 S.W.3d at 755.

Base contends that "Center's failure to disclose the whole truth concerning the Hillwood Parking Agreement conveyed a false impression that Center had or would immediately have an executed parking agreement with Hillwood." Base 8/19/11 Br. 24. It points to evidence that Center represented to Base that it would provide the Hillwood Parking Agreement, yet failed to disclose that it did not have a parking agreement with Hillwood; that the Hillwood Parking Agreement was conditioned upon other agreements that Center and Hillwood were negotiating; and that, despite many attempts, Hillwood had refused to sign the Hillwood Parking Agreement. The court holds that, based on this evidence, a reasonable trier of fact could find that Center created the false impression that it had or would immediately have an executed Hillwood Parking Agreement, so that it had a duty to affirmatively disclose information that it had that was necessary to correct that false impression. Accordingly, the court concludes that Center is not entitled to summary judgment dismissing Base's counterclaim for common law fraud in the inducement by nondisclosure.

3

Finally, concerning Base's counterclaim for statutory fraud under Tex. Bus. & Com. Code Ann. § 27.01(a)(1), Center appears to move for summary judgment on the basis that Base has failed to present evidence that would enable a reasonable trier of fact to find that

Center made a false representation of past or existing fact for the purpose of inducing Base to enter into the Lease.

Base responds by pointing to evidence that, on June 3, 2008, to induce Base to execute the Lease, Center told Base that it would provide a signed Hillwood Parking Agreement.  Base cites a June 2, 2008 email in which Base stated, "[w]e do need the various exhibits and attachments," and to which Skenderian responded, "[o]nce I receive the signed lease, I will obtain the signatures on the various attachments, compile the exhibits and send out a complete lease package."  Base 8/19/11 App. 62.  Base also points to evidence that the Hillwood Parking Agreement was a central term of the Lease, that Base indicated that it needed assurance that the Chili's would have allocated parking close to the restaurant, and that Base would not have executed the Lease without the Hillwood Parking Agreement.

The court has already concluded that a reasonable trier of fact could find that Center made a false representation when it implied that, if Base signed the Lease, Center would produce a signed Hillwood Parking Agreement.  This evidence, in combination with evidence that Base indicated that the Hillwood Parking Agreement was central to entering into the Lease, and that Base requested "the various exhibits and attachments" (one of which was to be the Hillwood Parking Agreement), is sufficient to enable a reasonable trier of fact to find that Center's statement that "[o]nce I receive the signed lease, I will obtain the signatures on the various attachments, compile the exhibits and send out a complete lease package," Base 8/19/11 App. 62, was made with the purpose of inducing Base to enter into the Lease.

- 19 -

F

Base also moves for summary judgment on its fraudulent inducement counterclaims.

Assuming *arguendo* that Base is in fact objecting to the bankruptcy court's recommendation that Base's summary judgment motion be denied, the court reaches the same result following *de novo* review. Because Base will have the burden of proof on these counterclaims at trial, to be entitled to summary judgment establishing these counterclaims, Base must satisfy the "beyond peradventure" standard, which is a "heavy" burden. *See supra* § III. Base has not met this heavy burden, and its motion for partial summary judgment establishing its fraud counterclaims is denied.

VI

The court now considers Base's other fraud counterclaims—"common law fraud" and "string along fraud" —and Center's contentions that it is entitled to summary judgment on these counterclaims.

Center argues there is no genuine issue of material fact regarding (i) whether it made a false representation to Base; (ii) whether, when it made the representation, it either knew the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth; (iii) whether it made the representation with the intent that Base rely on it; (iv) or whether Base justifiably relied on the representation.

Except for the fourth contention, the court has already addressed Center's arguments in the context of Base's fraudulent inducement counterclaims and has concluded, as to each, that Base has created a fact issue that precludes summary judgment. The court adheres to

these conclusions in this context as well. As for the element of justifiable reliance, the court concludes that there is evidence in the summary judgment record that would enable a reasonable trier of fact to find that Base justifiably relied on Center's allegedly false representations.

Base argues that it justifiably relied on Center's representations regarding the Hillwood Parking Agreement when entering into the Lease. It points to evidence that, before agreeing to tender to Center a signed copy of the Lease, it requested that Center provide the exhibits to the Lease, and that Center represented that, if Base executed the Lease, Center would provide all exhibits, including a signed Hillwood Parking Agreement. As a result, Base signed the Lease. Based on this evidence, a reasonable trier of fact could find that, in executing the Lease, Base justifiably relied on Center's representation that it would obtain the Hillwood Parking Agreement. Other than its damages argument, which the court addresses below, *see infra* § VII, Center does not present any other basis on which to grant summary judgment dismissing Base's "common law fraud" or "string along fraud" counterclaims. Accordingly, Center's motion for summary judgment is denied to the extent it relates to these counterclaims.[10]

---

[10]Although Center does not appear to move for summary judgment on this basis, it states in a footnote that it "is not aware of a cause of action under Texas law entitled 'string along fraud.'" Center 7/27/11 Br. 31 n.7. The court disagrees. Texas courts, and courts applying Texas law, have recognized claims for string-along or ongoing fraud to induce continued contractual performance as a distinct valid cause of action. *See, e.g., Nat'l Ctr. for Policy Analysis v. Fiscal Assocs., Inc*., 2002 WL 433038, at *5-6 (N.D. Tex. Mar. 15, 2002) (Lindsay, J.) (recognizing fraud claim based on defendants' post-contract promises of performance that fraudulently induced plaintiff to continue relationship with defendant past

VII

Center moves for summary judgment dismissing all of Base's fraud counterclaims on the ground that Base cannot prove that it suffered damages or injury as a result of any fraud that Center committed.  Center posits that Base cannot recoup the expenses it incurred in its failed business based on not uncommon permitting and other delays that Center allegedly caused.

Tex. Bus. & Com. Code Ann. § 27.01 provides for the recovery of "actual damages," and, sometimes, exemplary damages.  Because § 27.01 does not define the term "actual damages," Texas courts look to the common law for guidance.  *See, e.g., Hawkins v. Walker*, 233 S.W.3d 380, 391-92 (Tex. App. 2007, no pet.) (applying without discussion the common law measure of damages for fraud in § 27.01 statutory fraud case).  Under Texas common law, both out-of-pocket and benefit-of-the-bargain damages are methods of measuring direct actual damages.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (stating that, under the common law, actual damages can be either direct or consequential, and that direct damages for misrepresentation may be measured as out-of-pocket or as benefit-of-the-bargain damages); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 858 (Tex. App. 2005, no pet.) (noting that "out-of-pocket" and "benefit-of-the-bargain"

---

the time for performance rather than sue for breach or explore other options); *Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, 2005 WL 3371875, at *6 (S.D. Tex. Dec. 12, 2005) (recognizing validity under Texas law of string-along fraud where defendant failed to disclose defective condition of software to induce plaintiff to install and use newest software version and thus to remain defendant's customer).

are the two common law measures of economic damages).  A fraud plaintiff "may recover consequential damages that are foreseeable and directly traceable to and result from the fraud." *Shell Oil Prods. Co. v. Main Street Ventures, L.L.C.*, 90 S.W.3d 375, 384 (Tex. App. 2002, pet. dism'd); *see also Arthur Andersen & Co.*, 945 S.W.2d at 816 ("Actual damages are those damages recoverable under common law.  At common law, actual damages are either 'direct' or 'consequential.'" (citations omitted)); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 n.1 (Tex. 1998) ("When properly pleaded and proved, consequential damages that are foreseeable and directly traceable to the fraud and result from it might be recoverable.").

Base seeks to recover as damages for fraud and fraudulent inducement the costs it incurred in converting the leased space from retail space into a Chili's restaurant.  It has introduced evidence that it would not have executed the Lease in the absence of the Hillwood Parking Agreement; it maintains that allocated parking was material to the Lease; and it offers deposition testimony of Gilbert Aranza, its sole member, that it "would never have executed the lease if [it] wasn't going to get that proper parking. . . . [it] would never have moved forward."  Base 8/19/11 App. 9.

Based on the evidence in the summary judgment record, a reasonable trier of fact could find that Base would not have entered into the Lease had Center not represented that it would be able to obtain the Hillwood Parking Agreement.  In other words, there is a genuine issue of material fact regarding whether Center fraudulently induced Base to enter into the Lease based on the promise of a parking agreement.  A reasonable trier of fact could

also find that it was foreseeable to Center that, as a result of entering into the Lease, Base would begin construction of the Chili's and would incur costs in doing so.[11]  Accordingly, to the extent Base incurred construction and other costs as a result of being fraudulently induced to enter into the Lease, such costs may be recoverable as consequential damages. *Shell Oil Prods. Co*., 90 S.W.3d at 384.  Accordingly, Center is not entitled to summary judgment based on a failure to produce evidence of an injury or damages.

VIII

Finally, the court considers Base's breach of contract counterclaim.  Although following *de novo* review the court reaches the same conclusion as did the bankruptcy court—i.e., that Center is entitled to summary judgment dismissing this counterclaim—it does so based on different reasoning.

A

Base argues that Center's failure to provide the Hillwood Parking Agreement breached the Lease, entitling it to damages.  Center moves for summary judgment on this counterclaim, contending that there is no genuine issue of material fact as to whether (1) Base performed, tendered performance of, or was excused from performing its contractual obligations under the lease, (2) Center breached the lease, or (3) Center's breach caused or resulted in an injury to Base.  Center also maintains that this counterclaim must fail because Base never provided Center written notice and an opportunity to cure any alleged breach, as

---

[11]Base has produced a report in which its expert opines that Base sustained a loss of $3,093,983.00 in connection with the Lease agreement.

the Lease required; parking in Lot E was not material to the Chili's; Base has not suffered any damages as a result of the alleged breach; and the Lease bars the recovery of consequential damages.

### B

The court begins with Center's arguments concerning Base's alleged damages.  Under Texas law, "'[g]enerally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed.'"  *L&C Consultants, LLC v. ASH Petroleum, Inc.*, 2009 WL 3110200, at *9 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.) (quoting *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370, 372 (Tex. App. 2009, pet. denied)), *aff'd*, 464 Fed. Appx. 199 (5th Cir. 2010).  In support of its breach of contract counterclaim, Base does not present any evidence that would enable a reasonable trier of fact to find that, if Center had provided the Hillwood Parking Agreement, Base would have been in a different economic position.  For example, Base has not introduced any evidence that the Chili's would have fared any better than it did had its customers been able to park in Lot E during non-event times rather than in another lot near the AAC.  Instead, Base's theory of damages is that, absent Center's misrepresentation that the Hillwood Parking Agreement was be executed and provided to Base, it would have never entered into the Lease, and, had it not entered into the Lease, it would not have incurred more than $2.8 million damages in construction costs to finish out the Chili's as a restaurant.  But these damages are not contractual "benefit-of-the-bargain" damages.  Rather, Base is clearly seeking to recover its out-of-pocket losses, or consequential damages.

In moving for summary judgment on Base's breach of contract counterclaim, Center argues that Base is precluded by the terms of the Lease from recovering consequential damages. Base provides no evidence or argument in response. The Lease provides, in § 15.5:

> LIQUIDATION OF DAMAGES. NEITHER OF THE PARTIES SHALL BE LIABLE FOR ANY PUNITIVE DAMAGES OR ANY CONSEQUENTIAL DAMAGES OF THE OTHER PARTY AS A RESULT OF ANY BREACH OF THIS LEASE (IT BEING AGREED BY THE PARTIES THAT ANY SUMS PAYABLE BY TENANT TO LANDLORD UNDER SECTION 15.1.2(I) ARE NOT PUNITIVE OR CONSEQUENTIAL DAMAGES).

Base 8/19/11 App. 39 (bold font omitted). The court agrees that, because Base is seeking consequential, out-of-pocket losses as a result of Center's breach of the Lease, the alleged damages are precluded under § 15.5 of the Lease. And because Base does not provide any other arguments or evidence of damages it suffered as a result of Center's alleged breach, the court grants Center's motion for summary judgment dismissing this counterclaim.[12]

\* \* \*

For the foregoing reasons, the court grants in part and denies in part Center's motion to dismiss Base's second amended counterclaim, denies Base's motion for partial summary judgment, and grants in part and denies in part Center's motion for summary judgment. Base's fraud counterclaims alleging statutory real estate fraud under Tex. Bus. & Com. Code

_____

[12]This result is different, of course, from Base's fraud counterclaims because consequential damages *are* available for those claims and are not precluded by contract.

- 26 -

Ann. § 27.01(a)(1), common law fraud in the inducement by affirmative representation, common law fraud in the inducement by nondisclosure, common law fraud, and string along fraud remain for trial. The court directs the clerk of court to reopen this case statistically. The court will address the need for any additional pretrial scheduling, and will set the remainder of the case for trial, by separate orders.

      **SO ORDERED.**

      April 21, 2015.


                                   SIDNEY A. FITZWATER
                                   UNITED STATES DISTRICT JUDGE